IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RUBY THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 2:12-cv-1071-MEF |
| v. ) | (WO – Do Not Publish) |
| ) | |
| WIREGRASS CONSTRUCTION ) | |
| CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ruby Thomas ("Thomas") brings claims of sexual harassment and retaliation in violation of Title VII, disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), and intentional infliction of emotional distress under Alabama law against her former employer, Defendant Wiregrass Construction Company, Inc. ("Wiregrass"). Before the Court is Wiregrass's Motion for Summary Judgment filed on October 4, 2013. (Doc. #32.) Thomas has not filed a response in opposition, despite being given ample opportunities by the Court to do so. Therefore, having carefully reviewed the submissions of the parties, the applicable law, and the record as a whole, the Court finds that Wiregrass's motion is due to be GRANTED.

**I. JURISDICTION AND VENUE**

The Court has subject matter jurisdiction over the claims in this action under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of

both.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23. The burden shifts to the non-movant "[o]nly after the moving party has satisfied that burden." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).

Once the moving part has met its burden, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 447 U.S. at 324. To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a district court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The district court must grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

While it would make the Court's job considerably easier if it could grant summary judgment in favor of a movant as a matter of course when a non-movant fails to respond to a summary judgment motion, the law of this Circuit does not permit such an approach.  *See, e.g.*, *Trustees of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers v. Wolf Crane Serv. Inc.*, 374 F.3d 1034, 1039–40 (11th Cir. 2004); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004).  Indeed, a district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed.  Nor can a district court deem a claim abandoned by a party absent some affirmative indication that she no longer wishes to pursue that claim.  Rather, a court must conduct an independent review of the record and consider the merits of an unopposed summary judgment motion.  *See Trustees*, 374 F.3d at 1039–40; *One Piece of Real Prop.*, 363 F.3d at 1101–02.  The record as a whole must establish the absence of a genuine dispute of material fact before the court can enter judgment as a matter of law.  *See One Piece of Real Prop.*, 363 F.3d at 1101–02.

While the district court is not required to "sua sponte review all of the evidentiary

materials on file at the time the motion is granted . . . [it] must ensure that the motion itself is supported by evidentiary materials." *See id.* (citing *Dunlap v. Transamerica Occidential Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988)). "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* (citing *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989)). Additionally, a district court must "indicate that the merits of the motion were addressed." *Id.* at 1102 (citing *Dunlap*, 858 F.2d at 532).

### III.  BACKGROUND[1]

**A.  Facts**

Wiregrass is a highway and street paving contractor based out of Dothan, Alabama. In August 2006, Wiregrass hired Thomas to work at its Montgomery location. Thomas was initially hired as a "pilot car driver" but was later reassigned as a "laborer." Thomas's main responsibilities as a laborer were traffic control, moving barrels, shoveling asphalt, flagging intersections, and putting up signs. Gordon Shirley ("Shirley") was the Superintendent at Wiregrass during Thomas's employment. Doug Clark ("Clark") was Thomas's foreman and direct supervisor when she was first hired. After he passed away, Al Blevins ("Blevins")

---

[1] As a result of Thomas's failure to respond to Wiregrass's motion for summary judgment, she has presented no evidence disputing Wiregrass's factual assertions. Under the Federal Rules of Civil Procedure, "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). Wiregrass has presented the deposition testimony of Thomas in addition to the declarations of four other witnesses. While the Court must view the facts in the light most favorable to Thomas, as the non-movant, in the absence of any response from Thomas, the Court deems Wiregrass's factual assertions undisputed.

4

replaced Clark as Thomas's foreman and direct supervisor. Osbourne Blount ("Blount") was unofficially referred to as "Assistant Foreman," but he did not have the authority to hire, fire, reprimand, or demote Thomas.

Thomas suffers from diabetes, high blood pressure, high cholesterol, arthritis, glaucoma, bronchitis, an unspecified blood disorder, anxiety, and insomnia. Thomas admits that her diabetes limited her ability to perform her job at Wiregrass and that it continues to limit her ability to work.

Between March 2007 and November 17, 2011, a series of incidents occurred which form the basis of this suit. First, Thomas alleges that between March 2007 and the summer of 2011, Blount sexually harassed her on four separate occasions. On the first occasion, in March of 2007, Thomas alleges that a co-worker informed her that Blount had called her a "whore." On the second and third occasions, which both took place sometime in 2010, Thomas alleges that Blount discussed Thomas's sex life with co-workers in Thomas's presence. Finally, during the summer of 2011, Blount allegedly asked Thomas to meet him at his hotel room. Thomas further complained that Blount "sometimes" seemed to undress her with his eyes and would ask her out on coffee dates.

Second, Thomas complained that Wiregrass failed to comply with her request for a port-a-let attached to a small trailer that would follow her down the road as she moved along the job site. Thomas claimed the privacy of a port-a-let was necessary for her to change the tubing of her insulin pump. Wiregrass advised Thomas that she would be given freedom to leave the job site and drive to a nearby restroom. On October 25, 2011, Thomas provided

Wiregrass with a light duty note restricting her ability to lift over ten pounds. When light duty work was not available for Thomas, Wiregrass sent her home. In November 2011, after Thomas was sent home on three or four occasions because no light duty work was available, Blevins told her to check back the following Tuesday. On November 17, 2011, Thomas warned Blevins that if she showed up on Tuesday it would mean she would still be working for Wiregrass, but if not, it would mean she was leaving the company. Thomas did not return to work the following Tuesday and never attempted to return to work at Wiregrass after November 17, 2011.[2]

Third, and finally, Thomas claims that, during the summer of 2011, Blevins and Shirley warned Wiregrass employees that the next person to "make a complaint or anything" to the home office would be fired. Both Blevins and Shirley deny making this statement. Thomas also claims that she was retaliated against because she told Wiregrass of her intention to contact OSHA and the Labor and Wage Board to report unfair working conditions.

### B. Procedural History

On March 22, 2012, Thomas filed a Charge of Discrimination with the EEOC, alleging that Wiregrass discriminated against her because of her race, gender, and disabilities. Thomas also claimed that she was retaliated against and sexually harassed by Blount. A

---

[2] Thomas testified that the incident occurred on November 12, 2011, but Wiregrass's records reflect that the last day Thomas worked was November 17, 2011.

6

Notice of Right to Sue was issued to Thomas on September 7, 2012, and, according to her, she likely received the notice the next day, September 8, 2012. On December 10, 2012, Thomas filed her complaint in this action.[3]

On October 4, 2013, Wiregrass filed its motion for summary judgment. (Doc. #32.) Thomas did not file a response to this motion within the briefing schedule deadlines established by the Court. On November 22, 2013, the Court held a status conference to address Thomas's failure to respond. At the conclusion of this conference, the Court gave Thomas permission to file a motion seeking leave to file a response to Wiregrass's motion for summary judgment or an extension of time to respond no later than November 25, 2013. On December 1, 2013, six days after the Court's deadline, Thomas filed a Motion to File Motion For Leave to File Out of Time Under Seal (Doc. #39), which the Court granted (Doc. #40). Despite the Court granting this motion, Thomas did not file a motion for leave to file a response out of time with the Court. Accordingly, Wiregrass's motion for summary judgment is unopposed.

## IV.  DISCUSSION

### A.  Title VII and ADA Claims

Title VII and the ADA require a plaintiff to file suit within ninety days of receipt of a Notice of Right to Sue. 42 U.S.C. § 2000e-5(f)(1). The ninety day period begins to run

---

[3] Thomas testified her attorney prepared the complaint in this case but that she filed it *pro se* "because at the time [her attorney] did not know whether he would take the case or not." (Doc. #33, Ex. 1.)

upon receipt of the certified letter at the plaintiff's residence. *Norris v. Fla. Dep't. of Health and Rehabilitative Servs.*, 730 F.2d 682 (11th Cir. 1984). The plaintiff bears the burden of establishing that she filed her complaint within ninety days of a Notice of Right to Sue. *See Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002).

Wiregrass has presented undisputed evidence showing that the EEOC issued and mailed to Thomas a Notice of Right to Sue from its Birmingham, Alabama office on Friday, September 7, 2012. Thomas testified that she did not remember the day she received the Notice, but admitted that "normally mail takes a day from Birmingham." (Doc. #33, Ex. 1.) Thomas filed her complaint in this action on December 10, 2012, ninety-three days later. Because Thomas failed to file a response to Wiregrass's motion for summary judgment, she has presented no evidence demonstrating that her lawsuit was filed within ninety days of receipt of her Notice of Right To Sue, thus making it timely. In fact, Thomas's own testimony supports the fact that she did not file her Title VII and ADA claims in a timely manner. Therefore, summary judgment is due to be GRANTED in favor of Wiregrass on Thomas's Title VII and ADA claims. *See*, *e.g.*, *Martinez v. U.S. Sugar Corp.*, 880 F. Supp. 773, 777 (M.D. Fla. 1995), *aff'd*, 77 F.3d 497 (11th Cir. 1996) (finding that plaintiff had not met his burden of proof where 95 days elapsed between the day the Notice of Right to Sue was dated and the date his action was filed and the plaintiff could not remember the date on which he received the notice).[4]

---

[4] In a footnote, Wiregrass argues in the alternative that Thomas's failure to timely file a Charge of Discrimination also bars a number of her Title VII and the ADA claims. While it may

## B.     State Law Claim

Thomas also claims that Wiregrass is liable under state law for intentional infliction of emotional distress. (Doc. #1.) The Court has supplemental subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) provides that a "district court may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." Because the federal claims over which this Court had original jurisdiction have been resolved against Thomas, the Court declines to exercise its supplemental jurisdiction over the state law claim and, instead, dismisses it without prejudice. *See, e.g.,* 28 U.S.C. § 1367(c)(3); *Un. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). This dismissal should not work to Thomas's disadvantage if she chooses to bring this claim in state court because the statute of limitations for this claim is tolled during the pendency of this action. *See* 28 U.S.C. § 1367(d).

## V. CONCLUSION

Based on the foregoing, it is hereby ORDERED that Wiregrass's Motion for Summary Judgment (Doc. # 32) is GRANTED, and Thomas's claims in this action are DISMISSED WITH PREJUDICE. The pretrial hearing and trial in this matter are CANCELLED.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

---

have merit, the Court will not address this argument, as Thomas's failure to file suit within ninety days of receiving her Notice of Right to Sue is a sufficient basis to grant summary judgment in favor of Wiregrass on Thomas's Title VII and ADA claims.

DONE this the 14th day of January, 2014.

                                                /s Mark E. Fuller
                                      UNITED STATES DISTRICT JUDGE